UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2006 MAR 24  PM 2:42

| | |
|---|---|
| CAROLE KEETON STRAYHORN, KIMBLE D. ROSS, DAVID MAYES MIDDLETON II, AND BARBARA RUUD,<br>Plaintiffs<br><br>V.<br><br>ROGER WILLIAMS, TEXAS SECRETARY OF STATE,<br>Defendant | CASE NO. A06CA205 SS |

# PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Carole Keeton Strayhorn, Kimble D. Ross, David Mayes Middleton II, and Barbara Ruud, hereby file their Original Complaint and state as follows:

## PARTIES

1. Plaintiff Carole Keeton Strayhorn ("Strayhorn") is the Texas Comptroller of Public Accounts and is seeking to become an independent candidate in the 2006 Texas gubernatorial election.

2. Plaintiff Kimble D. Ross is a resident of the State of Texas, a registered voter in Texas, and a person who desires to vote for and campaign for the election of Strayhorn as Texas governor.

3. Plaintiff David Mayes Middleton II is a resident of the State of Texas, a registered voter in Texas, and a person who desires to vote for and campaign for the election of Strayhorn as Texas governor.

1

4. Plaintiff Barbara Ruud is a resident of the State of Texas, a registered voter in Texas, and a person who desires to vote for and campaign for the election of Strayhorn as Texas governor.

5. Defendant Roger Williams is the Secretary of State for the State of Texas ("the Secretary") and may be served with process at the Texas Capitol Building, Room 1E.8, Austin, Texas 78701.

## JURISDICTION AND VENUE

6. This is a proceeding arising under the First and Fourteenth Amendments to the United States Constitution, 28 U.S.C. § 1343, 42 U.S.C. § 1983, and the Texas Election Code, therefore making jurisdiction proper under 28 U.S.C. §§ 1331, 1367(a). As the Secretary's official office is located in this judicial district, venue is proper under 28 U.S.C. § 1391(b).

## BACKGROUND

7. Carole Keeton Strayhorn timely filed her declaration of intent to run for Texas governor as an independent candidate as required by section 142.002 of the Texas Election Code. In order to run for governor as an independent, a prospective candidate must tender an application and petitions containing valid signatures equal to at least 1% of the total votes cast for governor in the most recent Texas election, TEX. ELEC. CODE § 142.007(1), which equals 45,540 signatures.

8. Because no gubernatorial primary runoff is necessary, an independent candidate has approximately two months between the date of the primary, March 7, 2006,

2

and the filing deadline, May 11, 2006, in which to gather and file the signatures with the Secretary. *See* TEX. ELEC. CODE §§ 142.005, .006, .009(1); 41.007(b). Upon receipt of an application, the Secretary is required to review it, including the petitions, as soon as practicable and immediately inform the prospective candidate of any deficiencies found. *Id.* § 141.032(c), (e). The purpose of this statutory scheme is to allow prospective candidates an "opportunity to cure" any defects that would be discovered through a "proper review before the filing deadline" by the Secretary. *In re Francis*, No. 06-0040, 2006 WL 197976, at *5 (Tex. Jan. 27, 2006).

9. In reviewing petitions that are required to contain in excess of 1,000 signatures, the Secretary may use statistical sampling methods to determine if the petitions contain a sufficient number of valid signatures. TEX. ELEC. CODE § 141.069. Although sampling will provide the Secretary with an equally valid review of Strayhorn's petitions, he has arbitrarily stated that he will not do a statistical sample, but will verify all petitions one signature at a time. *See* Exhibit "A". Additionally, the Secretary's spokesman has stated that the Secretary believes this manual review will take at least two months. *See* Exhibit "B". The Secretary then stated he will complete the process by the "statutory deadline" of 55 days before the general election day. See Exhibit "A."

10. Between the time that Strayhorn files her application and the Secretary completes a review of the validity of Strayhorn's petition signatures, she is effectively hindered in her efforts of campaigning for governor. Until there is some

3

indication that Strayhorn has submitted a sufficient number of signatures, she will not be able to raise campaign funds as effectively as possible, will be hampered in invitations to candidate forums, and will for all practical purposes not be considered a candidate on the ballot. If, in addition to the expeditious manual review, the Secretary refuses to perform an expeditious statistical analysis, then Strayhorn's major-party opponents will gain a large head start on campaigning for the office of governor. This head start, resulting from the actions of the Secretary, will be difficult for Strayhorn to overcome, creating an unnecessary burden that is the equivalent of preventing her name from being on the ballot at all.

11. During the time Strayhorn's candidacy is in limbo pending a protracted review of her petitions, the Plaintiff voters will be prevented from effectively organizing and advocating her election. Until the Plaintiff voters know whether they actually have a candidate, any attempts at organizing, fundraising or other types of political advocacy will be unnecessarily difficult.

12. Plaintiff Strayhorn has put in place a system to verify the signatures of the petitions that she will submit to the Secretary. These methodologies will allow Plaintiff to verify the validity of the signatures in a matter of a few weeks. Strayhorn cannot conceive of how the Secretary can fail to verify the Strayhorn signatures within a similar timeframe.

13. The Secretary, however, steadfastly avers that it will take him some two months to accomplish this same task. With the information technologies now available,

such an assertion would indicate that the Secretary's refusal to utilize the statutory statistical sampling method of verifying the signatures, while claiming that his verification process will take months to perform, is a pretext for an unnecessary delay in informing the public of Strayhorn's eligibility as a candidate.

14. As set out above, the credibility of Strayhorn's status as a viable candidate is critical to almost every aspect of her and her supporters' efforts to conduct a successful campaign. The Secretary has a duty to conduct the verification process in the most expeditious process to prevent Strayhorn and similarly situated persons from being disadvantaged in comparison to the major party candidates.

15. The Texas Election Code defines the hours of the election day from 7 a.m. to 7 p.m. The Texas Election Code prohibits primary election voters from signing a candidate's petition. The Texas Election Code does not refer to the "day of the election" but "election day." No person may vote in the primary unless they are standing in line at a polling precinct at 7 p.m., the end of the "election day." The Chief non-political Attorney of the Elections Division of the Secretary's office expressly confirmed that signature collections could begin after the end of the voting day, to-wit, 7:00 p.m., March 7, 2006 (Exhibit "C"). The Secretary, a political appointee of Strayhorn's principal opponent, later reversed this ruling. Strayhorn says that such signatures are valid.

## FEDERAL CLAIMS

16. Pursuant to 28 U.S.C. §§ 1343, 2201-02 and 42 U.S.C. § 1983, federal courts can determine when a State has deprived its citizens of federal constitutional rights and grant such equitable relief as is necessary prevent the constitutional violation. This includes cases that impinge on a citizen's right to associate for political purposes.

17. The ability to associate for political purposes lies at the very heart of those rights protected by the First and Fourteenth Amendments to the federal constitution. *Buckley v. Valeo*, 424 U.S. 1, 15 (1976). When a State's electoral law places a unique burden on independent candidates, it "discriminates against those candidates and-of particular importance-against those voters whose political preferences lie outside the existing political parties." *Anderson v. Celebrezze*, 460 U.S. 780, 794 (1983). Accordingly, a "burden that falls unequally . . . on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment," because the "primary values protected by the First Amendment . . . are served when election campaigns are not monopolized by the existing political parties." *Id.* at 793-94.

18. As the ultimate expression of this right to political association, "'[v]oting is of the most fundamental significance under our constitutional structure.'" *Burdick v. Takashi*, 504 U.S. 428, 433 (1992) (citation omitted). However, the right to associate and vote for independent candidates is not absolute, but is subject to regulation by the State. *Id.* If the State has imposed "severe burdens on

[associational] rights," then to be constitutional they "must be narrowly tailored and advance a compelling state interest." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). If the State imposes less severe burdens, however, they may be upheld if the State can demonstrate ""'important regulatory interests'"" that are "'sufficiently weighty to justify the limitation.'" *Id.* at 358-59 (citations omitted). In either case, the Court must "weigh the '"character and magnitude"' of the burden the State's rule imposes on [Plaintiffs'] rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Id.* at 358 (citations omitted).

19. The burden the State has imposed on Plaintiffs in this case is to unnecessarily and detrimentally delay the candidacy of Strayhorn for Texas Governor. Rather than using the legislatively approved method of sampling to determine the validity of Strayhorn's petitions, the Secretary has decided to review each and every signature and has stated that this will take two months. If it indeed takes that long, that is a significant period of time that will prevent Plaintiffs from being able to effectively associate because they won't even know if Strayhorn will actually be a candidate.

20. As courts have recognized, political association is more than merely having your candidate's name on the ballot. If that were the case, then it would be permissible for the Secretary to delay announcing whether a person had qualified for the ballot a week before the election, which no one would contend is constitutionally valid. Rather, real political association allows voters to get "to

know the candidates personally, to select their choice, to give money to their selection, and to organize the people in their precincts or counties in the campaign for their choice." *Smith v. Clark*, 189 F. Supp. 2d 529, 535-36 (S.D. Miss. 2002). None of these things can realistically happen for Strayhorn until she has been acknowledged as qualifying for the ballot by the Secretary. Conversely, those supporting her prospective opponents can begin associating and campaigning for their choices immediately after the primary elections.

21. Not every delay in determining a person's status as a candidate is impermissible. No one could argue that the delay occasioned by a runoff in one of the primaries would be unconstitutional. In this case, however, we have a delay that falls on independent candidates and not those of the major parties. Moreover, the burdens occasioned by this delay are not justified by any sufficiently weighty concerns of the State that make such burdens necessary.

22. The burdens imposed in this instance are completely unnecessary because all Strayhorn has sought from the Secretary is that, in addition to his expeditious manual review, he perform a statistical sample as authorized by the legislature so that she and her supporters may have this crucial information as soon as is practicable. Strayhorn and her supporters understand that a properly performed statistical analysis will uncover any potential problems with her petitions and thus will serve to protect Plaintiffs' First and Fourteenth Amendment rights in this instance, even if the Secretary decides to do a signature-by-signature manual review as well.

23. However, the Secretary's refusal to perform a statistical analysis, and thereby needlessly delay independent voters from learning the identity of a viable candidate, significantly burdens their rights of political association. *Cf. The Green Party v. Weiner*, No. 00 CIV. 6639, 2000 WL 1280913, at *3 (S.D.N.Y. Sep. 8, 2000) (noting that the Green "Party would be significantly hampered if dilatory procedures attributable to the paper ballot process delayed it in learning the identity of its candidate for the Senate, and therefore impaired its ability to begin an effective campaign in the short time between the primary and the general election"). Such a state electoral scheme fails to pass constitutional muster no matter what level of scrutiny is used.

24. Under either the strict or intermediate level of scrutiny, this delay constitutes an unconstitutional burden because the State has no necessity of imposing it. In *Pilcher v. Rains*, 853 F.2d 334 (5th Cir.1988), the Fifth Circuit held, under intermediate scrutiny, that requiring minority party candidates to gather voter registration numbers on their petitions violated the federal constitution because it imposed a significant burden on ballot access and there was no necessity for them. In that case, although State law demanded such numbers be on the petitions, the federal courts found the Secretary could perform his verification of petitions without such information and that the added burden could not be justified because the State had "utterly failed to present evidence on the third step of the test, the *necessity* of the requirement." *Id.* at 336-37. The Fifth Circuit

later applied this same analysis to independent candidates in *Texas Indep. Party v. Kirk*, 84 F.3d 178, 187 (5th Cir. 1996).

25. The State, as a matter of law, cannot show necessity for performing a manual review to the exclusion of a statistical analysis since the Texas Election Code specifically provides for statistical reviews of candidate petitions. The Secretary cannot argue that the method provided by the legislature, and which his office routinely uses, *see Pilcher*, 853 F.2d at 334, is insufficient to verify a candidate's petitions. Thus, the Secretary's decision is not required by law and he is simply exercising his discretion in a manner that unnecessarily imposes significant burdens on Plaintiffs' associational rights. As such, this action by the Secretary in refusing to do a statistical analysis violates Plaintiffs' First and Fourteenth Amendment rights.

## STATE LAW CLAIMS

26. Pursuant to section 273.081 of the Texas Election Code, a court may grant an injunction to a candidate who is threatened with harm from an action taken by an election authority that is in contravention of the Election Code.

27. State law requires the Secretary to review Strayhorn's petitions as soon as practicable and immediately inform her of any deficiencies found. TEX. ELEC. CODE § 141.032(c), (e). The purpose of these requirements is to allow prospective candidates an "opportunity to cure" any defects that would be discovered

through a "proper review before the filing deadline" by the Secretary. *In re Francis*, No. 06-0040, 2006 WL 197976, at *5 (Tex. Jan. 27, 2006).

28. When viewed in isolation, section 141.069 of the Election Code would merely permit, but not require, the Secretary to use a statistical analysis in order to verify the number of valid signatures on her petitions. However, in light of section 141.032's admonition to perform a review as soon as practicable, it becomes clear that if a manual review will take longer than sampling, then the Election Code will require a statistical review.

29. Consequently, section 141.032(c), (e) of the Texas Election Code requires the Secretary to review Strayhorn's petitions immediately upon receipt using statistical sampling.

## PRAYER

Plaintiffs respectfully request that upon hearing this matter the Court grant Plaintiffs judgment in this matter and:

    A.    Declare that the Secretary's failure to use statistical sampling to review the validity of Strayhorn's petitions immediately upon receipt violates Plaintiffs' First and Fourteenth Amendment right to political association;

    B.    Grant Plaintiffs a mandatory injunction requiring the Secretary to review the validity of Strayhorn's petitions immediately upon receipt and in a

      manner that will produce a determination in the most expedited time possible.

B.    Declare that the Secretary's use of a manual review of Strayhorn's petitions violates section 141.032 of the Texas Election Code.

C.    Grant Plaintiffs an injunction preventing the Secretary from using exclusively a non-statistical manual review to determine the validity of Strayhorn's petitions.

      Respectfully submitted,

      RAY, WOOD & BONILLA, L.L.P.

By: _/s/ Randall B. Wood_
      Randall B. Wood
      State Bar No. 21905000
      Doug W. Ray
      State Bar No. 16599200

2700 Bee Caves Road #200
Austin, Texas 78746
(512) 328-8877 (Telephone)
(512) 328-1156 (Telecopier)

MINTON, BURTON, FOSTER & COLLINS, P.C.
Roy Q. Minton
State Bar No. 14186000

1100 Guadalupe Street
Austin, Texas 78701
(512) 476-4873 (Telephone)
(512) 479-8315 (Telecopier)
**ATTORNEYS FOR PLAINTIFF**
**CAROLE KEETON STRAYHORN**

f:\clients\01267\Complaint2

12

# The State of Texas



Executive Division
Capitol Building, 1E.8
P.O. Box 12697
Austin, Texas 78711-2697

Roger Williams
Secretary of State

Phone: 512-463-5770
Fax: 512-475-2761
Dial 7-1-1 For Relay Services
www.sos.state.tx.us

February 28, 2006

Mr. Brad McClellan
Campaign Manager
Carole Keeton Strayhorn for Governor
P.O. Box 684219
Austin, Texas 78768-419

Via fax to (512) 469-9323
and U.S. Postal Service

Dear Mr. McClellan:

In response to your letter, dated February 27, 2006, in which you asked for responses to four issues, my responses, along with your questions, are as follows:

(1)     "Whether our petition forms meet and do not violate the statutory requirements"

Response: As you know, we cannot fully respond to the validity of your petitions until such time they have actually been completed and submitted to our office with the requisite number of signatures required for an independent candidate for Governor. That being said, the format of the forms you submitted to our office do contain the following minimum state requirements provided in Section 141.062 of the Texas Election Code: (1) the signer's residence address; (2) the signer's date of birth or the signer's voter registration number and, (3) if the territory from which signatures must be obtained is situated in more than one county, the county of registration; (4) the date of signing; (5) the signer's printed name; (6) the affidavit of circulator; and (7) each statement that is required by this code to appear on each page of the petition appears, at the time of signing, on the page on which the signature is entered. Therefore, at this time, the forms you submitted do not violate the statutory requirements imposed under Section 141.062 of the Texas Election Code.

(2)     "Whether independent candidates can start collecting signatures after the election day primary is over at 7:00 p.m. on March 7th barring a gubernatorial runoff"

Response: As was stated in our correspondence with your organization on February 1, 2006 and twice again on Friday, February 24, 2006, assuming that there is not a runoff primary election for the office of governor, the earliest that the petition may be circulated is March 8, 2006. The statutory language of Section 142.009(a) of the Texas Election Code is clear and direct and is provided below again for your review:

Exhibit "A", Page 1 of 3

Mr. Brad McClellan
Page 2

> § 142.009. PETITION TO BE CIRCULATED AFTER PRIMARY. A signature on a candidate's petition is invalid if the signer:
> (1) <u>signed the petition on or before general primary election day</u> or, if a runoff primary is held for the office sought by the candidate, on or before runoff primary election day; or
> (2) voted in the general or runoff primary election of a political party that made a nomination, at either primary, for the office sought by the candidate.
>
> Tex. Elec. Code Ann. §142.009 (Vernon 2003) (emphasis added).

(3) "Whether independent candidates can submit an application with the required number of signatures and continue to submit additional signatures within the statutory time to allow your office to begin validating the signatures quickly and efficiently."

Response: I stand by our response provided to you on Friday, February 24th as follows: "Section 142.010(a) of the Election Code directs that the Secretary of State only certify applications which meet the requirements of Section 142.004(b). Additionally, the general rule is that a petition may not be supplemented, modified, or amended on or after the date it is received by the authority with whom it is required to be filed unless expressly authorized by law. The Legislature has authorized a supplementation process under very narrow circumstances in Section 277.0023 of the Election Code, but that process is not applicable to an independent candidate's petition. Therefore, our office will be unable to certify on a rolling or periodic basis the submission of petitions from your organization.

(4) "Whether your office will be able to provide a "reasonable" time for a statistical sampling test—twenty-four hours—or if your office insists on validating every signature—to check validity of at least 20,000 signatures per day."

Response: As you may know, I have a statutory duty to verify any petitions submitted by Ms. Strayhorn "...not later than the 55th day before general election day..." to certify her application for a place on the November ballot. Tex. Elec. Code §142.010(b). Furthermore, several methods of verification are available to me to accomplish the requirement of Section 142.010 of the Texas Election Code.

Due to the fact that there are twelve (12) declarations of intent to run as an independent candidate for statewide offices filed with the Office of the Secretary of State, and there is statutory prohibition against the signing of more than one petition for a particular office by an individual, I have determined that the most reliable and accurate

Exhibit "A", Page 2 of 3

Mr. Brad McClellan
Page 3

method of verification of both the individual signatures and the necessary cross reference of those signatures with the other petitions is to physically check each signature on each petition. My office is currently investigating how best to implement this process and how long it will take. It is my intent to undertake this task in the most expeditious manner possible and I assure you that the approval process will be completed prior to the statutory deadline imposed by the Election Code.

For your convenience, I have enclosed copies of the three letters (one from February 1st and two from February 24th) wherein either I or my staff have previously addressed most of the issues you present here. As always, please do not hesitate to contact me if you have additional questions.

Sincerely,

*[signature: Roger Williams]*

Roger Williams
Secretary of State

Enclosures

Exhibit "A", Page 3 of 3

**Austin American-Statesman**
**statesman.com**

 PRINT THIS

# Strayhorn's camp contemplates trip to court

## Her campaign manager charges state with playing politics against independent candidates

By W. Gardner Selby
AMERICAN-STATESMAN STAFF
Tuesday, February 28, 2006

Carole Keeton Strayhorn's gubernatorial campaign on Monday charged an appointee of Gov. Rick Perry with playing politics with election laws, citing conflicting messages on whether voters can sign Strayhorn's independent candidacy petitions right after polls close on major-party primaries next Tuesday.

"It's hard enough running as an independent in this state," said Brad McClellan, Strayhorn's campaign manager and son, adding that the campaign is weighing legal action against the state.

A spokesman for Secretary of State Roger Williams called the charge baseless. "All the decisions are based entirely on the election code," Scott Haywood said.

Laura Stromberg, a spokeswoman for independent gubernatorial candidate Kinky Friedman, saw little merit to Strayhorn's objections but agreed that the law requiring independents to collect more than 45,000 signatures in a short time to get on the ballot is unfair.

Strayhorn's camp spoke eight days before Democratic and Republican primaries. The elections will probably double as kickoff opportunities for frantic petition drives by Friedman and Strayhorn as they strive to reach the November ballot.

Perry, who has token opposition in the GOP primary, and the winner of a three-way Democratic fray will also face off in the fall.

McClellan bandied a Feb. 6 e-mail from a lawyer for the secretary of state's office stating that candidates could collect signatures right after the polls close at 7 p.m. March 7. But in a Feb. 24 letter to McClellan, Williams called the lawyer's advice "inaccurate information" and said signatures are not to be collected until the next day.

Exhibit "B", Page 1 of 2

http://statesman.printthis.clickability.com/pt/cpt?action=cpt&title=Strayhorn%27s+camp+c...    3/2/2006

Linda Curtis of Independent Texans, a group describing itself as representing independent voters, fielded the e-mail from Elizabeth Hanshaw Winn, a lawyer in the agency's elections division. Winn's follow-up e-mail to Curtis, dated Feb. 24, says Winn realized later that state law bars voters from signing petitions on election day.

"In one precinct, the last voter may finish voting at 7:15 p.m., while in another precinct (if there is a long line at 7 p.m.) the last voter may not finish voting until 9 p.m. Surely, the legislature did not intend to have an inconsistent deadline across precinct lines."

Curtis on Monday called the agency's position "silly," adding that she recalled the Reform Party collecting signatures for presidential candidate Ross Perot with the state's permission after polls closed on primary night 1996.

Haywood, asked to comment, said requirements for minor parties veer from those for independent candidates.

McClellan said Strayhorn intends to collect signatures after polls close at 7 p.m. despite Williams' position. "To take even five hours from us," the hours from 7 p.m. to midnight, "is wrong," he said.

In a letter to Williams, McClellan refers to the gap between Winn's Feb. 6 e-mail and Williams' letter, stating, "I can only guess that as a political appointee and past fundraiser for Mr. Perry that once again your office is being politically biased."

His letter also objects to the secretary of state's estimate that it could take two months to verify petition signatures submitted by Friedman and Strayhorn. The letter asks whether she can get signatures starting after polls close and whether candidates can submit voter petitions on a gradual basis for verification by the state rather than presenting all petitions at once.

McClellan also asks Williams to say whether his office will use statistical sampling of petitions to qualify candidates for the ballot or if the office "insists on validating every signature."

Haywood said Monday that any signatures collected before March 8 will be invalid. And he said the law is clear that candidates must submit their petitions at one time and not on a rolling basis.

He said the agency based its two-month forecast for counting signatures on the time it took to verify signatures submitted by independent presidential candidate Pat Buchanan in 2000.

Haywood said every signature will be checked, with workers making sure that voters do not sign for two candidates. "Our goal is to get this 100 percent right. There's no way to do that with statistical sampling," he said.

Robert Black, Perry's campaign spokesman, said there's been no contact between the campaign and Williams.

**Find this article at:**
http://www.statesman.com/search/content/news/stories/local/02/28indies.html

Exhibit "B", Page 2 of 2

**From:** Elizabeth Hanshaw Winn [mailto:EHanshawWinn@sos.state.tx.us]
**Sent:** Monday, February 06, 2006 4:32 PM
**To:** 'Linda Curtis'
**Subject:** RE: request from Linda Curtis

This is to confirm that they may collect signatures after the polls close (after 7 p.m.), as long as the office is not on either party's runoff ballot.

---

**From:** Linda Curtis [mailto:ljcurtis@indytexans.org]
**Sent:** Monday, February 06, 2006 4:01 PM
**To:** ehanshawwinn@sos.state.tx.us
**Subject:** request from Linda Curtis

February 6, 2006

Elizabeth Hanshaw-Winn
Assistant Secretary of State
State of Texas

Dear Elizabeth:

This is just to formalize my request today for your understanding of the timing for independent petitioning to begin this year. My understanding is that - unless there is a runoff - independent candidate petitioning may begin immediately following the closing of the primary polls at 7 pm on March 7th.

Please confirm this information for me and thanks again for your time!

Sincerely,

Linda Curtis
Independent Texans
512-454-7200
http://indytexans.org
PO Box 14294
Austin, TX 78761

3/2/2006

Exhibit "C"