UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CAROLE KEETON STRAYHORN, § <br> KIMBLE D. ROSS, DAVID MAYES § <br> MIDDLETON II, AND BARBARA § <br> RUUD, § <br>     Plaintiffs § <br> § <br> V. § <br> § <br> ROGER WILLIAMS, TEXAS § <br> SECRETARY OF STATE, § <br>     Defendant § | CASE NO. A-06-CA-205 SS LY |

# PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION

Plaintiffs respectfully request this Court enter a preliminary injunction in this matter and show the Court as follows:

## INTRODUCTION

1. Plaintiffs are Carole Keeton Strayhorn, a prospective independent candidate for Texas Governor and Kimble Ross, David Middleton II, and Barbara Ruud, registered voters in Texas who wish to associate for the purposes of electing Strayhorn. Defendant is Roger Williams, the Texas Secretary of State.

2. Plaintiffs sued Defendant for violating their First and Fourteenth Amendment rights to political association by unnecessarily delaying Strayhorn's candidacy by refusing to expeditiously perform a statistical sample to determine the validity of her application and petitions for a place on the ballot.

3. Plaintiffs also sued Defendant for violating state law by failing to perform

1

a review of Strayhorn's petitions as soon as is practicable, which is required under the Texas Election Code.

## ARGUMENT

4.      Plaintiffs seek to enjoin the Secretary from validating Strayhorn's petitions through the exclusive use of a manual review of the validity of her petition signatures, because this would unnecessarily delay Strayhorn's candidacy to the point that it would unduly infringe on Plaintiffs' constitutional right to associate to promote her election.

   A. *Plaintiffs Can Show Substantial Likelihood of Success on the Merits*

5.      There is substantial likelihood that Plaintiffs will prevail on the merits. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975); *DSC Comm. Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996).

6.      Pursuant to 28 U.S.C. §§ 1343, 2201-02 and 42 U.S.C. § 1983, federal courts can determine when a State has deprived its citizens of federal constitutional rights and grant such equitable relief as is necessary prevent the constitutional violation. This includes cases that impinge on a citizen's right to associate for political purposes.

7.      The ability to associate for political purposes lies at the very heart of those rights protected by the First and Fourteenth Amendments to the federal constitution. *Buckley v. Valeo*, 424 U.S. 1, 15 (1976). When a State's electoral law places a unique burden on independent candidates, it "discriminates against those candidates and-of particular importance-against those voters whose

political preferences lie outside the existing political parties." *Anderson v. Celebrezze*, 460 U.S. 780, 794 (1983). Accordingly, a "burden that falls unequally . . . on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment," because the "primary values protected by the First Amendment . . . are served when election campaigns are not monopolized by the existing political parties." *Id.* at 793-94.

8. As the ultimate expression of this right to political association, "'[v]oting is of the most fundamental significance under our constitutional structure.'" *Burdick v. Takashi*, 504 U.S. 428, 433 (1992) (citation omitted). However, the right to associate and vote for independent candidates is not absolute, but is subject to regulation by the State. *Id.* If the State has imposed "severe burdens on [associational] rights," then to be constitutional they "must be narrowly tailored and advance a compelling state interest." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). If the State imposes less severe burdens, however, they may be upheld if the State can demonstrate ""'important regulatory interests'"" that are "'sufficiently weighty to justify the limitation.'" *Id.* at 358-59 (citations omitted). In either case, the Court "must weight the '"character and magnitude"' of the burden the State's rule imposes on [Plaintiffs'] rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Id.* at 358 (citations omitted).

9. The burden the State has imposed on Plaintiffs in this case is to unnecessarily and detrimentally delay the candidacy of Strayhorn for Texas

Governor. Rather than using the legislatively approved method of sampling to determine the validity of Strayhorn's petitions, the Secretary has decided to review each and every signature and has stated that this will take two months. If it indeed takes that long, that is a significant period of time that will prevent Plaintiffs from being able to effectively associate because they won't even know if Strayhorn will actually be a candidate.

10. As courts have recognized, political association is more than merely having your candidate's name on the ballot. If that were the case, then it would be permissible for the Secretary to delay announcing whether a person had qualified for the ballot a week before the election, which no one would contend is constitutionally valid. Rather, real political association allows voters to get "to know the candidates personally, to select their choice, to give money to their selection, and to organize the people in their precincts or counties in the campaign for their choice." *Smith v. Clark*, 189 F. Supp. 2d 529, 535-36 (S.D. Miss. 2002). None of these things can realistically happen for Strayhorn until she has been acknowledged as qualifying for the ballot by the Secretary. Conversely, those supporting her prospective opponents can begin associating and campaigning for their choices immediately after the primary elections.

11. Not every delay in determining a person's status as a candidate is impermissible. No one could argue that the delay occasioned by a runoff in one of the primaries would be unconstitutional. In this case, however, we have a delay that falls on independent candidates and not those of the major parties.

4

Moreover, the burdens occasioned by this delay are not justified by any sufficiently weighty concerns of the State that make such burdens necessary.

12. The burdens imposed in this instance are completely unnecessary because all Strayhorn has sought from the Secretary is that, in addition to his manual review, he perform a statistical sample as authorized by the legislature so that she and her supporters may have this crucial information as soon as is practicable. Strayhorn and her supporters understand that a properly performed statistical analysis will uncover any potential problems with her petitions and thus will serve to protect Plaintiffs First and Fourteenth Amendment rights in this instance, even if the Secretary decides to do a signature-by-signature manual review as well.

13. However, the Secretary's refusal to perform a statistical analysis, and thereby needlessly delay independent voters from learning the identity of a viable candidate, significantly burdens their rights of political association. *Cf. The Green Party v. Weiner*, No. 00 CIV. 6639, 2000 WL 1280913, at *3 (S.D.N.Y. Sep. 8, 2000) (noting that the Green "Party would be significantly hampered if dilatory procedures attributable to the paper ballot process delayed it in learning the identity of its candidate for the Senate, and therefore impaired its ability to begin an effective campaign in the short time between the primary and the general election"). Such a state electoral scheme fails to pass constitutional muster no matter what level of scrutiny is used.

14. Under either the strict or intermediate level of scrutiny, this delay

constitutes an unconstitutional burden because the State has no necessity of imposing it. In *Pilcher v. Rains*, 853 F.2d 334 (5th Cir.1988), the Fifth Circuit held, under intermediate scrutiny, that requiring minority party candidates to gather voter registration numbers on their petitions violated the federal constitution because it imposed a significant burden on ballot access and there was no necessity for them. In that case, although State law demanded such numbers be on the petitions, the federal courts found that the Secretary could perform his verification of petitions without such information and that the added burden could not be justified because the State had "utterly failed to present evidence on the third step of the test, the *necessity* of the requirement. *Id.* at 336-37. The Fifth Circuit later applied this same analysis to independent candidates in *Texas Indep. Party v. Kirk*, 84 F.3d 178, 187 (5th Cir. 1996).

15. The State, as a matter of law, cannot show necessity for performing a manual review to the exclusion of a statistical analysis since the Texas Election Code specifically provides for statistical reviews of candidate petitions. The Secretary cannot argue that the method provided by the legislature, and which his office routinely uses, *see Pilcher*, 853 F.2d at 334, is insufficient to verify a candidate's petitions. Thus, the Secretary's decision is not required by law and he is simply exercising his discretion in a manner that unnecessarily imposes significant burdens on Plaintiffs' associational rights. As such, this action by the Secretary in refusing to do a statistical analysis violates Plaintiffs' First and Fourteenth Amendment rights.

16. Pursuant to section 273.081 of the Texas Election Code, a court may grant an injunction to a candidate who is threatened with harm from an action taken by an election authority that is in contravention of the Election Code.

17. State law requires the Secretary to review Strayhorn's petitions as soon as practicable and immediately inform her of any deficiencies found. TEX. ELEC. CODE § 141.032(c), (e). The purpose of these requirements is to allow prospective candidates an "opportunity to cure" any defects that would be discovered through a "proper review before the filing deadline" by the Secretary. *In re Francis*, No. 06-0040, 2006 WL 197976, at *5 (Tex. Jan. 27, 2006).

18. When viewed in isolation, section 141.069 of the Election Code would merely permit, but not require, the Secretary to use a statistical analysis in order to verify the number of valid signatures on her petitions. However, in light of section 141.032's admonition to perform a review as soon as practicable, it becomes clear that if a manual review will take longer than sampling, then the Election Code will require a statistical review.

19. Consequently, section 141.032(c), (e) of the Texas Election Code requires the Secretary to review Strayhorn's petitions immediately upon receipt using statistical sampling.

   B. *Plaintiffs Will Suffer Irreparable Harm*

20. Plaintiffs will suffer irreparable harm because Defendant's failure to expeditiously review Strayhorn's petitions will cause a loss of Plaintiffs First Amendment associational rights, and the "loss of First Amendment freedoms,

for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996).

   C. *Harm to Plaintiffs Outweighs Harm to Defendant*

21.   In this case, the harm caused to Plaintiffs by denying a preliminary injunction would outweigh any harm suffered by Defendant from granting it. *Yakus v. U.S.*, 321 U.S. 414, 440 (1944); *PCI Transp., Inc. v. Fort Worth & W. R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

22.   If Defendant is enjoined from using exclusively a manual review to validate Strayhorn's petitions then all that is required is that he perform a statistical review in addition to his manual review. In this instance, all the work that he would have to perform to do a statistical review would be work that he would have to perform in his manual review. Accordingly, granting the injunction will place no additional burdens on Defendant, while denying the injunction will cause harm to Plaintiffs by unnecessarily and detrimentally depriving them of a full and equal ability to associate for the purposes of electing their preferred candidate.

   D. *The Public Interest is not Harmed by Granting the Preliminary Injunction*

23.   Issuing the preliminary injunction will not harm the public interest because it would serve only to afford the public a more robust campaign for the Texas governorship by placing independent candidates before the electorate in a timely and expeditious manner.

24. Plaintiffs request the court to set their request for preliminary injunction for hearing at the earliest possible time.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request the Court to grant the preliminary injunction as prayed for against Defendant.

Respectfully submitted,

RAY, WOOD & BONILLA, L.L.P.

By: *Randall B. Wood*
Randall B. Wood
State Bar No. 21905000
Doug W. Ray
State Bar No. 16599200

2700 Bee Caves Road #200
Austin, Texas 78746
(512) 328-8877 (Telephone)
(512) 328-1156 (Telecopier)

MINTON, BURTON, FOSTER &
 COLLINS, P.C.
Roy Q. Minton
State Bar No. 14186000
1100 Guadalupe Street
Austin, Texas 78701
(512) 476-4873 (Telephone)
(512) 479-8315 (Telecopier)

**ATTORNEYS FOR PLAINTIFF
CAROLE KEETON STRAYHORN**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiffs' Application for Preliminary Injunction has been sent via certified mail, return receipt requested, to the following:

> Mr. Edward D. Burbach
> Deputy Attorney General for Litigation
> Office of the Texas Attorney General
> Attorney General's Office
> 300 West 15th Street; 11th Floor
> Austin, Texas 78701
> **Attorneys for Defendant Roger Williams,**
> **Texas Secretary of State**

on this the 27th day of March, 2006.

                                                                            Randall B. Wood

F:\clients\01267\Appl for Prel Inj