IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2006 MAY 10 PM 4:48
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | | |
|---|---|---|
| CAROLE KEETON STRAYHORN, | § | |
| KIMBLE D. ROSS, DAVID MAYES | § | |
| MIDDLETON, II, AND | § | |
| BARBARA RUUD, | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CAUSE NO. A-06-CA-205-LY |
| | § | |
| ROGER WILLIAMS, TEXAS | § | |
| SECRETARY OF STATE, | § | |
| DEFENDANT. | § | |

## MEMORANDUM OPINION AND ORDER

Carole Keeton Strayhorn, the Texas Comptroller of Public Accounts, who is seeking to become an independent candidate in the 2006 Texas gubernatorial general election, and three Texas voters, who support Strayhorn for governor,[1] commenced this action against Roger Williams, Secretary of State for the State of Texas (the "Secretary of State") seeking declaratory and injunctive relief pursuant to Title 28 United States Code sections 1343, 2201-02 and Title 42 United States Code section 1983, and contending that the Secretary of State violated the First and Fourteenth Amendments to the United States Constitution[2] by impinging Strayhorn and her political supporters' right to associate for political purposes.[3] Strayhorn's complaints focus on the Secretary of State's

---

[1] Plaintiffs Kimble D. Ross, David Mayes Middleton II, and Barbara Ruud are each identified as "a resident of the State of Texas, a registered voter in Texas, and a person who desires to vote for and campaign for the election of Strayhorn as Texas governor." As their interests do not diverge from those of Strayhorn, for convenience "Strayhorn" will be used to identify Carole Strayhorn, individually, as well as Plaintiffs, collectively. The particular use will be apparent from the context.

[2] U.S. Const. amend. I, XIV.

[3] Strayhorn's Complaint also asserts claims that the Secretary of State violated several provisions of the Texas Election Code, for which she seeks relief under Texas law. *See* Tex. Elec.

declared intention to verify petition signatures submitted by all independents seeking ballot access as candidates in the 2006 general election using a signature-by-signature review method. Strayhorn contends that the Secretary of State's choice to employ signature-by-signature verification imposes a critical, detrimental, and needless delay in her announcement that she is on the 2006 ballot, which in turn significantly hampers her campaign's fundraising, ability to secure media buys, and enlist volunteer workers. Strayhorn's Complaint requests this Court to "[d]eclare that the Secretary [of State]'s failure to use statistical sampling to review the validity of Strayhorn's petitions immediately upon receipt violates . . . [Strayhorn's] First and Fourteenth Amendment right to political association." However, in her briefing and argument, Strayhorn requests that this Court order the Secretary of State to statistically sample an adequate number of petition signatures at Strayhorn's expense, and make a preliminary announcement, indicating that within some level of certainty Strayhorn has adequate valid signatures to be certified as an independent candidate for governor and placed on the ballot for the 2006 Texas general election.

Having considered the evidence presented at the bench trial held May 1, 2006,[4] the pleadings, arguments of counsel, and applicable law, this Court finds that the Secretary of State's declared intention to verify petition signatures submitted by independents seeking to appear on the ballot as candidates using a signature-by-signature review method is a reasonable and nondiscriminatory

---

Code Ann. §§ 273.081, 141.0329 (c), (e) (West 2003). Counsel for Strayhorn stated in open court that they no longer desire to proceed with the state-law claims. Accordingly, the Court will dismiss Strayhorn's state-law claims without prejudice.

    Also pending in this action is Strayhorn's Plaintiffs' Application For Preliminary Injunction, filed March 27, 2006 (Clerk's Document No. 3). Because the parties agreed to proceed to trial on the merits, without a hearing on Strayhorn's application for preliminary injunction, the Court will dismiss the application as moot.

    [4] The parties jointly submitted all exhibits and deposition testimony.

restriction upon the First and Fourteenth Amendment rights of voters. Additionally, this Court finds that the Secretary of State is not required under the Constitution to perform statistical sampling in this instance, therefore, the denial of Strayhorn's request for a preliminary statistical sampling of signatures is not unconstitutional. Strayhorn's requested relief will be denied.[5]

## *I. The Controversy*

Texas has a detailed statutory system for the regulation of major, medium, and minor political parties as related to the nomination of candidates for the general election ballot. *See Texas Indep. Party v. Kirk*, 84 F.3d 178, 180 (5th Cir. 1996) (discussing Texas's election process and procedures). As independent candidates are not subject to a primary election or a nominating convention, Texas has adopted procedures for these candidates that are different from procedures applicable to party candidates. *See* Tex. Elec. Code Ann. §§ 141.001-.070, 142.001-.010 (West 2003 & Supp. 2005); *Nader v. Connor*, 332 F.Supp. 2d 982, 984-85 (W.D. Tex. 2004), *aff'd*, 388 F.3d 137 (5th Cir. 2004), *cert. denied*, 544 U.S. 921 (2005).

On January 2, 2006, Strayhorn timely filed her notice of intent to run as an independent candidate for governor of Texas in 2006. *See* Tex. Elec. Code Ann. § 142.002 (West 2003).[6] To be entitled to a place on the 2006 Texas general-election ballot, Strayhorn must file with the Secretary of State, on or before May 11, 2006, an application accompanied by a petition containing, *inter alia*,

---

[5] This Memorandum Opinion and Order shall constitute the Court's findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a).

[6] All provisions of the Texas Election Code cited by the Court are located in West edition, "copyright 2003," unless otherwise indicated.

3

45,540[7] valid signatures[8] of voters registered in Texas who have not voted in this year's general primary election of any political party that has nominated a candidate for governor. *See id.* §§ 141.062, 142.004, .005, .006, .007(1), .008. An independent seeking a place on the 2006 general-election ballot as a candidate has approximately two months between the date of the general primary election, March 7, and the application filing deadline, May 11, to gather signatures for the petition. *See id.* § 142.009 (petition to circulate after general primary election).

Upon receipt of an application and petition, the Secretary of State is required to review them, as soon as practicable after the date received, to determine whether they comply with the requirements as to form, content, and procedure that each must satisfy for the independent's name to be placed on the ballot. *See id.* § 141.032(a), (c). Regarding review of an independent's petition, the Texas Election Code provides the Secretary of State with three methods from which to choose to determine whether petition signatures are valid: (1) review and validate each signature; (2) statistical sampling that ensures an accuracy rate of at least 95 percent;[9] or (3) accept the affidavit of the circulator supporting each part of the petition signatures that the circulator witnessed. *See id.* §§ 141.004(b), .062, .065, .069, 142.010. The Texas Election Code leaves the choice of method to the Secretary of State's discretion. A deficiency in the requirements for one document, either the

---

[7] The number of valid signatures required is one percent of the total vote received by all candidates for governor in the most recent gubernatorial general election. *See* Tex. Elec. Code Ann. § 142.007(1).

[8] The Texas Election Code provides specific requirements for a valid petition signature. *See* Tex. Elec. Code Ann. § 141.063(a) (West Supp. 2005).

[9] If a petition must contain more than 1,000 signatures to be verified, the Secretary of State may use a statistical sampling method on the condition that the method employed ensures an accuracy rate of at least 95 percent. *See* Tex. Elec. Code Ann. § 141.069.

4

petition or the application, may not be remedied by the contents of the other document. *See id.* § 141.032(c). If the application or the petition, does not comply with the statutory requirements, the Secretary of State must reject it and immediately deliver to the filer written notice of the reason for the rejection. *See id.* § 141.032(e). Not later than the 55th day before the general election day, the Secretary of State must deliver the certification to the authority responsible for having the official ballot prepared in each county in which the independent candidate for governor's name is to appear on the ballot. *See id.* § 142.010(b). November 7 is the date of the 2006 Texas general election, therefore, the 55th day before the general election is September 13.

Strayhorn began collecting signatures immediately after the March 7 primaries. Before the party primaries, by letter dated February 28, 2006, the Secretary of State responded to several inquiries by Strayhorn's campaign manager, Brad McClellan, about the procedure and method the Secretary of State would employ in verifying petition signatures. McClellan asked whether the Secretary of State would allow supplementation of signatures after filing the application with a petition that facially contained the requisite number of signatures; whether the Secretary of State would conduct a statistical sampling test within twenty-four hours or would he proceed to check the validity of every signature that appears on the petition; and finally, whether if he chose to check each signature, would the Secretary of State do so at a rate of at least 20,000 signatures per day. By his February 28 letter, the Secretary of State responded that because he had before him twelve declarations of intent to run as an independent candidate for statewide office, and because of the statutory prohibition against the signing of more than one petition for a particular office by an individual, he determined that "the most reliable and accurate method of verification of both the individual signatures and the necessary cross reference of those signatures with the other petitions

5

is to physically check each signature on each petition." The Secretary of State also stated that he intended to undertake the task in the most expeditious manner possible and assured McClellan that the process would be completed before the statutory deadline. Additionally, the Secretary of State responded that he would not allow supplementation of petition signatures, because the only statutorily authorized supplementation procedure is inapplicable to Strayhorn's application and petition for access to the ballot as an independent candidate. *See id.* § 277.0023 (relating to petition authorized or required to be filed under law outside Election Code in connection with election).

Strayhorn then commenced this action, contending that the Secretary of State's statements with regard to his declared intention to check the validity of every petition signature submitted and his decision not to perform statistical sampling, violates the First and Fourteenth Amendments. Strayhorn now asks that this Court find that the Secretary of State must, at a minimum, statistically sample an adequate number of petition signatures, at Strayhorn's expense, and make a preliminary announcement, indicating that within some level of certainty, Strayhorn has adequate valid signatures to be certified as an independent candidate for governor and placed on the ballot for the 2006 Texas general election.

The Secretary of State, recognizing that he does not have the personnel to review the potentially several independent candidate applications and to verify their accompanying petition signatures,[10] hired TELA Technologies ("TELA"), an outside vendor, to assist his office with the signature-by-signature petition verification process. Based on deposition testimony from the

---

[10] Six independents have filed declarations of intent to run as a candidate for governor in the general election. Additionally, the Secretary's office may receive up to three ballot-access petitions from smaller political parties, who may if successful, present gubernatorial candidates, each of which would also require 45,540 valid petition signatures.

Secretary of State's Director of Elections Ann McGeehan and Melinda Nickless, a longtime Elections Division employee of the Secretary of State, the process to be used by the Secretary of State to verify petition signatures for the 2006 general election is the following: (1) the Secretary of State will facially review an application and petition upon receipt; (2) the application and petition will be bates stamped and copied, with the copies sent to TELA, who will enter the information on the petitions into an electronic database; (3) once all of the information is entered, TELA will return the database, in electronic format, to the Secretary of State; (4) that electronically formatted database will be loaded into the Secretary of State's "Oracle system" to begin running field queries against the voter registration and history database and checking for duplicate signatures; (5) any inconclusive data will be analyzed by the Secretary of State; and (6) at the conclusion of this process, the Secretary of State should be able to determine whether he may certify the candidate for a place of the ballot.

## II. Analysis

### A. Standing and ripeness

The Secretary of State contended at trial that because Strayhorn had yet to file her petition, and thus, the Secretary of State had yet to commence his signature-by-signature review of any petition, Strayhorn has suffered no harm. The Secretary of State contends, therefore, Strayhorn lacks standing to assert any constitutional claim, which is also not ripe for review. *See Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 102-03 (1998) (party has standing to sue if suffered harm that is concrete and actual or imminent, not merely conjectural or hypothetical). The Court agrees that Strayhorn had not filed her petition by the time of trial. However, she displayed in the courtroom 21 boxes she represented as containing petition forms reflecting over 115,000 signatures.

The Court has no reason to doubt her representation. Further, the Court takes notice that on May 9 Strayhorn delivered to the Secretary of State what she represented to be "[m]ore than 223,000 signatures on petitions in 101 bumper-sticker slapped boxes." W. Gardner Selby, *Strayhorn Claims Success Nearly Five Times Over Gubernatorial Candidate Submits Nearly Five Times Required Voter Signatures*, Austin Am.-Statesman, May 10, 2006, at B1. The Court finds, in accordance with the Secretary of State's declaration that he will conduct a signature-by-signature review of Strayhorn's petition, evidenced by his February 28 letter to McClellan and the contract with TELA, the Secretary of State is treating Strayhorn as a serious potential candidate. In light of these facts, this Court would accomplish nothing by holding that because Strayhorn had not submitted her application by the time of trial–a setting that had been agreed upon by the parties–this action should be dismissed. The Court holds that the alleged harm to be suffered by Strayhorn and her supporters by virtue of the Secretary of State's chosen signature-verification method is imminent and not merely conjectural or hypothetical. This controversy is ripe and Strayhorn has standing to pursue it.

### B. Is there a constitutional violation?

Before the last Texas general election, this Court addressed the ballot-access issues raised by Ralph Nader in his attempt to be placed on the ballot as an independent candidate for President of the United States. *See Nader*, 332 F.Supp.2d at 982. The Court finds that the same constitutional standards for review of such issues discussed and applied in that action are applicable here for resolving Strayhorn's alleged constitutional violations. *Id.*

Courts have long recognized that candidate eligibility requirements in state election laws implicate fundamental constitutional rights, and that the "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process

Clause of the Fourteenth Amendment, which embraced freedom of speech." *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983) (quoting *NAACP v. Alabama*, 357 U.S. 449, 460 (1958)). The right to associate and vote for independent candidates is not absolute, but rather, is subject to regulation by the state. *Burdick v. Takashi*, 504 U.S. 428, 433 (1992). Ballot-access restrictions place burdens on two kinds of rights–the right of individuals to associate for the advancement of political beliefs and the right of qualified voters of all political persuasions to cast their votes effectively. *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968). Not all restrictions imposed by states on candidates' ballot access impose constitutionally suspect burdens on voters' rights to associate or choose among candidates. *Anderson*, 460 U.S. at 788. States are granted authority to substantially regulate elections to ensure that they are fair, honest, and orderly through the enactment of election codes. *Storer v. Brown*, 415 U.S. 724, 730 (1974). These precepts affect to some degree the individual's right to vote and to associate with others for political ends, but the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions. *Anderson*, 460 U.S. at 788.

States, therefore, may place burdens on candidates so long as they are reasonable nondiscriminatory restrictions. After recognizing in *Storer* that "the requirements for an independent's attaining a place on the general election ballot can be unconstitutionally severe," courts must inquire "as to the nature, extent, and likely impact" of the election-law requirements. *Nader*, 332 F.Supp.2d at 987 (quoting *Storer*, 415 U.S. at 738). A court must weigh the character and magnitude of the injury to the rights protected by the First and Fourteenth Amendments against the state's interests in justifying the requirements imposed by its election laws. *Anderson*, 460 U.S. at 789. The level of scrutiny applied to the state's requirements depends on the extent to which the

9

challenged regulation burdens First and Fourteenth Amendment rights. *See Burdick*, 504 U.S. at 434; *Kirk*, 84 F.3d at 182. If the state's requirements severely restrict those rights, then the requirements may be upheld only if they are narrowly tailored to advance a compelling state interest. *Burdick*, 504 U.S. at 434; *Kirk*, 84 F.3d at 182. If, however, state law imposes only "reasonable," "nondiscriminatory" restrictions upon the First and Fourteenth Amendment rights of voters, the state's important regulatory interests are generally sufficient to justify the restrictions imposed. *Burdick*, 504 U.S. at 434.

Each case must be resolved on its own facts, after due consideration is given to the practical effect of election laws of a given state, viewed in their totality. *See Nader*, 332 F.Supp.2d at 988 (citing *Clements v. Fashing*, 457 U.S. 957, 963 (1982)). Beginning with the proposition that the requirements for an independent's attaining a place on the general-election ballot can be unconstitutionally severe, this Court must determine the nature, extent, and likely impact of the Texas requirements. *See Storer*, 415 U.S. at 738.

Here, the Court reviews the Texas election laws that provide the Secretary of State with three methods from which to choose to verify petition signatures, the Secretary of State's decision to review each petition signature-by-signature for validity, and his decision to deny Strayhorn's request to perform, at her expense, a preliminary statistical sampling test and, in an advisory fashion, inform Strayhorn of the test's results. As this Court noted in *Nader*, "[m]ore restrictive signature and deadline requirements for an independent candidate may be justified if the ballot-access requirements, as a whole, are reasonable and similar in degree to those for a minor political-party candidate." 332 F.Supp.2d at 988 (citing *Storer*, 415 U.S. at 745). This Court discussed the ballot access requirements for independent candidates as compared to minor political-party candidates

10

extensively in *Nader*, noting that independents are not subject to additional regulation, such as a convention process, and that they have only one requirement to meet to secure ballot access–they must file on or before a date set by statute, an application and petition containing a finite number of valid signatures. *See* 332 F.Supp.2d at 990; Tex. Elec. Code Ann. §§ 142.006, .007. "Taking into consideration the additional requirements imposed upon minor political-party candidates under Texas election laws, the variance between the ballot-access requirements for independent candidates and minor political-party candidates is not sufficiently severe to warrant strict scrutiny." *Nader*, 332 F.Supp.2d at 989.

Here the inquiry is over choices the Texas Legislature has given the Secretary of State to determine whether to place an independent candidate on the general-election ballot. The issue becomes whether the Secretary of State's choosing to individually verify signatures as opposed to statistical sampling places a severe burden on Strayhorn's First and Fourteenth Amendment rights or whether that burden is reasonable and nondiscriminatory.

For the Secretary of State to determine that a signature-by-signature review to discover whether each signer has neither voted in a party primary nor signed another independent candidate's petition is neither facially nor inherently unreasonable. The legislature has provided this choice. The state has a legitimate interest in establishing the seriousness of an independent candidate, may do so by requiring that a reasonable number of people support that candidacy, and that those who so signify their support by signing a petition are qualified to sign that petition. This Court thus holds that the election-code provisions at issue and the Secretary of State's construction of them are not sufficiently severe to warrant strict scrutiny.

This Court will thus review whether the Texas election laws and the Secretary of State's

11

decision to verify each petition signature imposes reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, and whether Texas's important regulatory interests are sufficient to justify these restrictions.

Strayhorn contends that an initial statistical sampling, with a preliminary indication about whether she will appear on the ballot, is required, because without it, the State is imposing a critical, unnecessary, and detrimental delay in her ability to announce that she is on the 2006 ballot, which substantially hinders her campaign's fundraising, ability to secure media buys, and enlisting volunteers to work in the campaign. Strayhorn contends that a statistical sampling could be performed and the results returned within a week, while a signature-by-signature review might take until mid-July to complete, causing a most harmful delay in her campaign. At trial she argued that on or before May 11, she would turn in at least 115,000 signatures, but, in light of the Secretary of State's disallowance of petition supplementation, she likely would wait until the deadline to file, in order that she may submit as many signatures as possible. As noted, Strayhorn post-trial delivered what is represented to be 223,000 signatures two days before the deadline. Strayhorn argues that because the Texas Legislature has given the Secretary of State discretion to verify petition signatures using statistical sampling, under the facts and circumstances surrounding the 2006 general election it is mandatory that he do so. Further, she argues nothing prevents the Secretary of State from performing a statistical sampling preliminarily as he continues to review each petition signature, and she contends that the burden on him to do so is minimal, particularly given the fact that Strayhorn would pay for the service. Strayhorn argues that the Secretary of State has never reviewed petition signatures for validity on a signature-by-signature basis, and has on several occasions employed statistical sampling. Strayhorn argues that due to advancements in technology, it is possible that

12

statistical sampling could be conducted and the results released in a matter of days.

The Secretary of State responds that Strayhorn's fundraising, media buy, and volunteer issues arise solely from her choice to attempt ballot access as an independent candidate for governor. The Secretary of State notes that despite Strayhorn's claims that the delay caused by the Secretary of State's signature-by-signature review of her petition will hamper her fundraising efforts, absent from the evidence is testimony from any potential contributor who has withheld a Strayhorn campaign contribution, or even testimony from an individual who has stated that a contribution will be withheld until Strayhorn is officially on the general election ballot. Additionally, according to Mark Sanders, Strayhorn's Communications Director, fundraising is proceeding at a very healthy rate and as of January 2006, the campaign had $8.1 million cash on hand, which places Strayhorn second only to incumbent governor Rick Perry, who had $9 million, and that it was Sanders's belief Democrat candidate Chris Bell had $130,000. Further, the Secretary of State notes the absence of evidence from media outlets that until Strayhorn is officially on the ballot, they will deny her requests for media spots. Sanders in fact testified that Strayhorn has not yet attempted to purchase any advertising and would not have done so even if guaranteed favorable rates. The Secretary of State contends that Strayhorn is asking him to create a process that provides her special treatment not afforded other independents seeking ballot access for the 2006 gubernatorial general election.

The Secretary of State does not dispute the fact that in the past statistical sampling has been employed to verify petition signatures. With one exception, the 1992 Ross Perot independent presidential campaign, which the Secretary of State refers to as an anomaly because the results were released in late May, the results were released between one and one-half and three months after submission of a petition. Nickless testified that the general rule has been that petition verification

13

takes two months, even when the statistical sampling method is used. Nickless testified that the option of accepting the affidavit of the circulators leads to the least accurate results, and especially in elections requiring the review of numerous signatures, the method has not been utilized. The Secretary of State acknowledges that concerns regarding cost and time involved in checking every petition signature has, in the past, lead to the use of either accepting the affidavit of the circulators or using statistical sampling. However, the Secretary of State contends advances in law and technology have made checking every signature the most accurate, efficient and practicable option, particularly in light of the fact that in this election there is the possibility that several independents will file petitions, the likelihood of duplicate signatures, and other circumstances surrounding the 2006 general election.

The 2006 general election will be the first statewide election in Texas pursuant to the Help America Vote Act of 2002.[11] For the first time, the official list of registered voters against which petition signatures are checked will be maintained by the Secretary of State's office. Additionally, voter history is now electronically available to the Secretary. Two hundred twelve of Texas's 254 counties maintain their voter information on the Secretary of State's computer system. The most populous counties, including Harris, Dallas, Bexar, Travis, and El Paso, however, do not. To aid his signature verification, the Secretary of State has requested the larger counties and others not yet online upload their voter-history information and electronically transfer their voter history records for the 2006 primary elections and run offs to him by April 24. Nickless testified that for the first time, verification of both voter registration and voter history can be performed centrally and electronically at the Secretary of State's office rather than piecemeal at numerous county clerk's

---

[11] *See* 14 U.S.C. §§ 15301-15545.

offices. Additionally, the TELA contract, which requires a 99% accuracy rate, requires that the Secretary of State deliver hard copies of the petitions to TELA as early as May 8, but no later than May 18, as at the time of Nickless's deposition and at time of trial, it was unknown how many applications would be filed seeking independent-candidate positions on the ballot. TELA is required to return the data on or before June 15, which is a maximum of four weeks from the later date of May 18. After the Secretary of State receives the computerized petition information from TELA, the Secretary of State will cross-check it against voter registration and voter history information in its database. Nickless testified that ideally, this process would take only minutes, but experience suggests that some of the data will be inconclusive as the due diligence of the circulator is crucial. Finally, the signatures on each petition must be cross-checked against every other petition, which the Secretary of State expects to perform without difficulty, as this process is very similar to the duplicate voter-record check the Secretary of State already performs.

The Court initially determines that the remedy Strayhorn seeks, an order that the Secretary of State provide an imprimatur of her ballot access as an independent candidate for governor, in a preliminary, advisory fashion, is not required by law. The Court finds that it must either declare that the statistical sampling is constitutionally mandated and order the Secretary of State to validate Strayhorn's petition signatures using that method, or find that the statutory system as applied is constitutional.[12]  To do as Strayhorn suggests would compel this Court to find the system constitutional, but imperfect, and engage the Court in judicial legislating. This the Court declines

---

[12] The Secretary of State argues that he could not independently sample at Strayhorn's expense and release the results because Texas law does not authorize such a procedure. The Court observes that it is aware of no Texas law, and has been directed to none by the Secretary of State, that prohibits the Secretary of State's voluntarily doing as Strayhorn requests.

15

to do.

Based on the totality of circumstances related to the 2006 general election, the Court finds that the statutory system, which provides the Secretary of State discretion to choose from three methods to validate petition signatures, one of which is statistical sampling, does not place an unreasonable burden on the voters' First and Fourteenth Amendment rights and satisfies the state's legitimate interest in determining how best to "assure itself that the candidate is a serious contender truly independent, and with a satisfactory level of community support." *Nader*, 332 F.Supp. 2d at 987 (quoting *Storer*, 415 U.S. at 746). Additionally, in light of the Secretary of State's duty to place serious candidates on the ballot, to ensure petition signatures of those seeking ballot access as an independent candidate are valid, and his duty to conduct an accurate review of the petition as soon as practicable, the Texas Election Code's system allowing the Secretary of State discretion to determine the method best suited to the particular circumstances of any given election, is not unduly restrictive or unreasonable. Further, after considering the facts and issues related to the 2006 general election, the Secretary of State's decision to verify each petition signature by signature, imposes but reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, and Texas's important regulatory interests in conducting fair, honest, and orderly elections are sufficient to justify his actions. Finally, the Court finds nothing that prevents Strayhorn from contracting with a nonpartisan firm to perform a statistical sampling of her petition signatures and report the results of such a test in tandem with the Secretary of State's signature-by-signature validation process. The Court will not mandate that the Secretary of State engage in campaign-credibility announcements in advance of his completion of legislatively mandated signature verification.

### *III. Conclusion*

Strayhorn seeks to have the Secretary of State lend credibility to her campaign prematurely by seeking an order directing the Secretary of State to give her campaign his imprimatur before completing his petition signature-by-signature review, which, given the circumstances of the 2006 general election, he has determined to be the validation method that best ensures an accurate review. Strayhorn chose to gain access to the ballot in the general election as an independent, and the Court finds that the Secretary of State has no obligation to assist her campaign in the manner she seeks. The Court also finds that the Texas Election Code's system allowing the Secretary of State discretion to choose among three methods for verifying petitions passes constitutional muster. No unreasonable burden is placed on the voters' First and Fourteenth Amendment right to associate for political purposes by the denial of Strayhorn's request for a preliminary determination of ballot access using a method different than that chosen by the Secretary of State.

**IT IS THEREFORE ORDERED** that Strayhorn's claim that the Secretary of State's choice to review her application and petition for ballot access as an independent candidate in the 2006 general election is unconstitutional is **DENIED**.

**IT IS FURTHER ORDERED** that Strayhorn's request that the Secretary of State statistically sample an adequate number of petition signatures, at Strayhorn's expense, and make a preliminary announcement indicating that, within some level of certainty, Strayhorn has adequate valid signatures to be certified as an independent candidate for governor and placed on the ballot for the 2006 Texas general election is **DENIED**.

**IT IS FURTHER ORDERED** that Strayhorn's request for injunctive relief is **DENIED**.

**IT IS FURTHER ORDERED** that Strayhorn's Plaintiffs' Application For Preliminary

Injunction filed March 27, 2006 (Clerk's Document No. 3) is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Strayhorn's claims for relief pursuant to Texas state law are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that all other relief not expressly granted is hereby **DENIED**.

SIGNED this __10th__ day of May, 2006.

```
                                    _____
                                    LEE YEAKEL
                                    UNITED STATES DISTRICT JUDGE
```